IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


RONALD MITCHELL,
      Petitioner,

vs.                                Case No.:  3:16cv150/MCR/EMT

FLORIDA DEPARTMENT OF CORRECTIONS
SECRETARY,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (ECF No. 1). Respondent filed an answer and relevant portions of the state court record (ECF No. 18). Petitioner filed a reply and three supplements (ECF Nos. 24, 29, 30, 31).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b). After careful consideration of all issues raised by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rule 8(a), Rules Governing Section 2254 Cases. It is further the

opinion of the undersigned that the pleadings and attachments before the court show

that Petitioner is not entitled to relief.

## I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established

by the state court record (*see* ECF No. 18).[1]  Petitioner was charged in the Circuit

Court in and for Escambia County, Florida, Case No. 2009-CF-5760, with trafficking

in illegal drugs (4 grams or more, but less than 14 grams, of hydrocodone) (Ex. A at

1).  Following a jury trial, Petitioner was found guilty as charged (Ex. A at 43, Exs.

B, C).  On September 8, 2010, Petitioner was sentenced to twenty (20) years of

imprisonment, with a 3-year mandatory minimum and pre-sentence jail credit of 279

days (Ex. A at 51–67, 69–75).  Petitioner, through counsel, appealed the judgment to

the Florida First District Court of Appeal ("First DCA"), Case No. 1D10-5209 (Ex.

D).  The First DCA affirmed the judgment per curiam without written opinion on

November 28, 2011, with the mandate issuing December 14, 2011 (Exs. F, G).

Mitchell v. State, 75 So. 3d 724 (Fla. 1st DCA 2011) (Table).

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (ECF No. 18).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

Case No.:  3:16cv150/MCR/EMT

On or about January 17, 2012, Petitioner filed a motion for mitigation of sentence in the state circuit court, pursuant to Rule 3.800(c) of the Florida Rules of Criminal Procedure (Ex. H).  The state court summarily denied the motion on January 23, 2012 (Ex. I).

On April 12, 2012, Petitioner filed a petition for writ of habeas corpus in the First DCA, Case No. 1D12-1956, alleging ineffective assistance of appellate counsel (Ex. J).  On January 17, 2013, the First DCA denied the petition on the merits (Ex. N). Mitchell v. State, 105 So. 3d 624 (Fla. 1st DCA 2013) (Mem).  Petitioner filed a motion for rehearing (Ex. O).  The First DCA denied the motion on July 16, 2013 (Ex. P).

On April 24, 2013, Petitioner filed a motion for post-conviction relief in the state circuit court, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. T at 42–126).  In an order rendered August 16, 2013, the state circuit court dismissed the motion because it lacked a signed oath (*id.* at 127–29).  The dismissal was without prejudice to Petitioner's filing a properly sworn motion within sixty (60) days (*id.*).  Petitioner filed an amended motion on September 13, 2013, asserting two claims (*id.* at 130–40).  The circuit court summarily denied one claim and ordered a limited evidentiary hearing on the other (Ex. U at 166–70).  Following the evidentiary

hearing, the circuit court entered a final order denying the amended Rule 3.850 motion (*id.* at 209–39, 240–43). Petitioner appealed the decision to the First DCA, Case No. 1D14-3534 (Ex. U at 244, Ex. V). The First DCA affirmed the judgment per curiam without written opinion on June 30, 2015, with the mandate issuing August 25, 2015 (Exs. Y, BB). <u>Mitchell v. State</u>, 171 So. 3d 706 (Fla. 1st DCA 2015) (Table).

On August 12, 2015, Petitioner filed a second Rule 3.850 motion in the state circuit court (Ex. EE at 1–22). The circuit court denied the motion as untimely (*id.* at 23–24). Petitioner appealed the decision to the First DCA, Case No. 1D15-5585 (*id.* at 42–43). The First DCA affirmed the judgment per curiam without written opinion on March 3, 2016, with the mandate issuing April 29, 2016 (Exs. FF, II). <u>Mitchell v. State</u>, 189 So. 3d 764 (Fla. 1st DCA 2016) (Table).

Petitioner filed the instant federal habeas action on April 4, 2016 (ECF No. 1).

II.    STANDARD OF REVIEW

Federal courts may grant habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pub. L. 104-132, § 104, 110 Stat. 1214, 1218–19. Section 2254(d) provides, in relevant part:

> **(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted

with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> **(1)**  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> **(2)**  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).  The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring).

Employing the Williams framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law,"

namely, "the governing legal principle or principles set forth by the Supreme Court

at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63,

71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established"

only when a Supreme Court holding at the time of the state court decision embodies

the legal principle at issue.  Thaler v. Haynes, 559 U.S. 43, 47, 130 S. Ct. 1171, 175

L. Ed. 2d 1003 (2010); Woods v. Donald, — U.S. —, 135 S. Ct. 1372, 1376, 191 L.

Ed. 2d 464 (2015) ("We have explained that clearly established Federal law for

purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this

Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines

whether the state court adjudication is contrary to the clearly established Supreme

Court case law.  The adjudication is not contrary to Supreme Court precedent merely

because it fails to cite to that precedent.  Rather, the adjudication is "contrary" only

if either the reasoning or the result contradicts the relevant Supreme Court cases.

Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding

th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does

not even require awareness of our cases, so long as neither the reasoning nor the result

of the state-court decision contradicts them.").  Where there is no Supreme Court

precedent on point, the state court's conclusion cannot be contrary to clearly established federal law.  *See* Woods, 135 S. Ct. at 1377 (holding, as to claim that counsel was per se ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants:  "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.  *See* Panetti v. Quarterman, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court.  Williams, 529 U.S. at 409; *see* Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam).  In applying this standard, the Supreme Court has emphasized:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong.  Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  Harrington, *supra*, at 102–103, 131 S. Ct. 770 (internal quotation marks omitted).

Woods, 135 S. Ct. at 1376 (quoting Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill v. Mecusker, 633 F.3d 1272, 1292 (11th Cir. 2011).  As with the "unreasonable application" clause, the federal court applies an objective test.  Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").  Federal courts "may not characterize . . . state-court factual

determinations as unreasonable merely because we would have reached a different conclusion in the first instance." Brumfield v. Cain, — U.S. —, 135 S. Ct. 2269, 2277, 192 L. Ed. 2d 356 (2015) (quotation marks omitted).

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct. 28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see, e.g.*, Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by the AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"). Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and § 2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *See* Cave v. Sec'y for Dep't of Corr., 638 F.3d. 739 (11th Cir. 2011). However, the Eleventh Circuit has declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an

insufficient factual basis for affirming the state court's decision." <u>Gill</u>, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied the AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* <u>Panetti</u>, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." <u>Richter</u>, 562 U.S. at 102.

## III.   EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[2] thereby giving the State the "'opportunity to pass upon and correct'

---

[2] Section 2254 provides, in pertinent part:

(b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
　　(A)  the applicant has exhausted the remedies available in the courts of the State; or
　　　　(B) (i)  there is an absence of available State corrective process; or
　　　　　(ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State

alleged violations of its prisoners' federal rights." <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  <u>Duncan</u>, 513 U.S. at 365–66; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); <u>Picard</u>, 404 U.S. at 277–78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In <u>Picard v. Connor</u>, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.*, 404 U.S. at 278, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

---

to raise, by any available procedure, the question presented.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  In Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  *Id.* 459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law." Anderson, 459 U.S. at 7.  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.  *Id.*, 459 U.S. at 7 & n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  *Id.*

Years later the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[3]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513 U.S. at 365–66.

In Baldwin v. Reese, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  541 U.S. 27, 32, 124 S. Ct. 1347, 158 L. Ed. 2d 64 (2004).  The Baldwin Court commented that "a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim

_____

[3]The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

in a state-court petition or brief, for example, by citing in conjunction with the claim

the federal source of law on which he relies or a case deciding such a claim on federal

grounds, or by simply labeling the claim 'federal.'" *Id.*, 541 U.S. at 32.  With regard

to this statement, the Eleventh Circuit stated in McNair v. Campbell, 416 F.3d 1291

(11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor
> indeed for petitioners seeking to establish exhaustion.  However, we
> agree with the district court that this language must be "applied with
> common sense and in light of the purpose underlying the exhaustion
> requirement[:] 'to afford the state courts a meaningful opportunity to
> consider allegations of legal error without interference from the federal
> judiciary.'" McNair [v. Campbell], 315 F. Supp. 2d [1277,] 1184 [(M.D.
> Ala. 2004)] (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct.
> 617, 620, 88 L. Ed. 2d 598 (1986)).  This is consistent with settled law
> established by the Supreme Court. . . . We therefore hold that "'[t]he
> exhaustion doctrine requires a habeas applicant to do more than scatter
> some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302–03 (citations omitted).[4]

---

[4] In his initial brief before the Court of Criminal Appeals, the petitioner cited one federal
case in a string citation containing other state cases, and in a closing paragraph in his argument that
extraneous materials were considered by the jury during deliberations, stated that there was a
violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the
United States Constitution, the Alabama Constitution[,] and Alabama law." McNair v. Campbell,
416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not
sufficient to meet the fair presentment requirement and noted that it was important that the petitioner
had never mentioned the federal standards regarding extraneous materials in his brief, but relied on
state law for his arguments.  *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review. Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See* Coleman v. Thompson, 501 U.S. 722, 734–35 & n.1, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303. In the second instance, a federal court must determine whether the last state court rendering judgment clearly and expressly stated its judgment rested on a procedural bar. *Id.* A

federal court is not required to honor a state's procedural default ruling unless that ruling rests on adequate state grounds independent of the federal question.  *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 151 L. Ed. 2d 820 (2002).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[5]  *Id.*  Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  *Id.*  Third, the state procedural rule must be adequate.  *Id.*  The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id.*

---

[5] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994).

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)). To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

Id. Although a habeas petitioner asserting a convincing claim of actual innocence need not prove diligence to overcome a procedural bar, timing is a factor relevant in

evaluating the reliability of a petitioner's proof of innocence.  *See* <u>McQuiggin v.</u>
<u>Perkins</u>, — U.S. —, 133 S. Ct. 1924, 1935, 185 L. Ed. 2d 1019 (2013).  As the Court
stated in <u>Schlup</u>, "[a] court may consider how the timing of the submission and the
likely credibility of [a petitioner's] affiants bear on the probable reliability of . . .
evidence [of actual innocence]."  513 U.S. at 332; *see also* <u>House v. Bell</u>, 547 U.S.
518, 537, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006).

Within this framework, the court will review Petitioner's claims.

IV.    PETITIONER'S CLAIMS

A.    <u>Ground One:  "Trial counsel was ineffective for failing to object to the</u>
<u>jury instruction for trafficking.  Alternatively, appellate counsel was ineffective</u>
<u>for failing to raise a claim of fundamental error on direct appeal."</u>

Petitioner claims his trial counsel was ineffective for failing to object to the jury
instruction on trafficking, on the ground that it included an uncharged method of
commission of the crime (ECF No. 1 at 4–7).  Petitioner additionally contends his
appellate counsel was ineffective for failing to argue that the trial court committed
fundamental error by giving the instruction (*id.*).

Petitioner concedes he presented his ineffective assistance of trial counsel
("IATC") claim to the state court's in his second Rule 3.850 motion, which was
dismissed as untimely (ECF No. 1 at 7–8).  Petitioner also concedes he failed to

present his ineffective assistance of appellate counsel ("IAAC") claim in his state habeas petition (*see id.*).  Petitioner contends he has established "cause" for the procedural default of his IATC and IAAC claims, pursuant to <u>Martinez v. Ryan</u>, 132 S. Ct. 1309, 1318–19 (2012), because he did not have counsel in either collateral proceeding (*see id.*).  Petitioner also appears to argue, in his reply and supplements to his reply, that the state court erroneously dismissed his second Rule 3.850 motion as untimely, because he was entitled to tolling of Florida's two-year filing deadline (*see* ECF Nos. 24, 29, 30, 31).  Petitioner argues he was entitled to tolling for the period between the filing of his first Rule 3.850 motion and the filing of his amended first Rule 3.850 motion (after the court dismissed the initial motion because Petitioner's factual statements and allegations were not accompanied by a proper oath) (*see id.*).

Respondent asserts a procedural bar to Petitioner's IATC and IAAC claims (ECF No. 18 at 13–16).  Respondent contends Petitioner has not shown "cause" for the procedural default of his IATC claim under <u>Martinez</u>, because the IATC claim is insubstantial (*id.* at 16–20).  Respondent additionally contends <u>Martinez</u> does not extend to IAAC claims (*id.* at 18).

The court will first address Petitioner's contention that the state court's dismissal of his second Rule 3.850 motion as untimely was erroneous.  The court

liberally construes Petitioner's contention as arguing that the state court's procedural ruling did not constitute an independent and adequate state rule of decision.

As previously discussed, the Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. *See* Judd, 250 F.3d at 1313. First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim. *Id.* Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. *Id.* Third, the state procedural rule must be adequate. *Id.* The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion. *Id.*

The state court's timeliness ruling satisfies the requirements of Judd. First, the state court clearly and expressly stated it was relying on Rule 3.850(b) of the Florida Rules of Criminal Procedure to resolve all the claims raised in Petitioner's second Rule 3.850 motion (*see* Ex. EE at 23–24). Second, the state court's decision rested entirely on state law grounds and was not intertwined with an interpretation of federal law (*see id.*). Third, Petitioner has not shown that the state court applied Florida's

statute of limitations in an arbitrary or unprecedented manner. Petitioner did not

present his tolling argument, or any facts to support a tolling argument, to the state

circuit court in his second Rule 3.850 motion or his motion for rehearing of the circuit

court's order dismissing the motion as untimely (*see* Ex. EE at 1–21, 25–38).

Additionally, Petitioner did not present a tolling argument to the First DCA on appeal

of the circuit court's dismissal (*see* Ex. GG). Since Petitioner did not present his

tolling argument to the state courts for consideration, he cannot show that the courts

acted arbitrarily or in an unprecedented manner by failing to apply it.

The court will next address Petitioner's argument that the procedural default of

his IATC claim was caused by the state court's failure to appoint counsel. The

Supreme Court held in Martinez, that if "a State requires a prisoner to raise an

ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may

establish cause for a default of an ineffective-assistance claim . . ." when (1) "the state

courts did not appoint counsel in the initial-review collateral proceeding" or (2)

"appointed counsel in the initial-review collateral proceeding, where the claim should

have been raised, was ineffective" pursuant to Strickland [v. Washington, 466 U.S.

668 (1984)]." Martinez, 566 U.S. 1, 14, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012).

In such instances, the habeas petitioner "must also demonstrate that the underlying

ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that

the prisoner must demonstrate that the claim has some merit." *Id.*

In Hittson v. GDCP Warden, 759 F.3d 1210, 1262 (11th Cir. 2014), the

Eleventh Circuit explained Martinez's "substantial claim" requirement:

> Martinez articulated the "substantial claim" requirement as follows:
>
> To overcome the default, a prisoner must . . . demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit. *Cf.* Miller–El v. Cockrell, 537 U.S. 322, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (describing standards for certificates of appealability to issue).
>
> Martinez, — U.S. at —, 132 S. Ct. at 1318–19. Neither Martinez nor Trevino [v. Thaler, — U.S. —, 133 S. Ct. 1911, 185 L. Ed. 2d 1044 (2013)] elaborated on or applied this standard, but we take the Court's reference to Miller–El to mean that it intended that lower courts apply the already-developed standard for issuing a COA, which requires "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).
>
> As the Court explained in Miller–El, "[a] petitioner satisfies this standard by demonstrating . . . that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." 537 U.S. at 327, 123 S. Ct. at 1034. Where a petitioner must make a "substantial showing" without the benefit of a merits determination by an earlier court, he must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." Slack v. McDaniel, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604, 146 L. Ed. 2d 542 (2000). That does not mean that a

petitioner must show "that some jurists would grant the petition." Miller–El, 537 U.S. at 338, 123 S. Ct. at 1040.  "[A] claim can be debatable even though every jurist of reason might agree, after the . . . case has received full consideration, that petitioner will not prevail." *Id.*

We observe that this standard is similar to the preliminary review conducted by district judges in § 2254 proceedings.  Rule 4 of the § 2254 Rules allows the district judge to summarily dismiss a petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief."  The Advisory Committee Notes further instruct that, in keeping with the heightened, fact-pleading requirement in habeas cases, "the petition is expected to state facts that point to a real possibility of constitutional error."  Advisory Committee Note to Rule 4 of the Rules Governing Section 2254 Cases (quotation marks omitted).

Thus, we examine the allegations in . . . the § 2254 petition to see whether "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right."  In making this determination, we consider the fact-pleading requirement for § 2254 petitions, and the standard from Strickland.

Hittson, 759 F.3d at 1269–70 (footnotes omitted).

Here, Petitioner contends his trial counsel was ineffective for failing to object to the jury instruction on trafficking, on the ground that it instructed the jury that one of the elements the State must prove is that Petitioner "knowingly sold, delivered, or possessed" hydrocodone (*see* ECF No. 1 at 4–6).  Petitioner contends the "or possessed" language was erroneous because the State declined to prosecute him on an illegal possession charge since Petitioner had a valid prescription for the hydrocodone

(*id.*).    Petitioner further argues there was no evidence that he obtained the

hydrocodone illegally (*id.*).  Petitioner contends the general verdict form made it

impossible to determine whether the jury convicted him based upon conduct for which

he was not charged and of which there was no evidence, i.e., possession (*id.*).

Petitioner contends trial counsel was ineffective for failing to object to the jury

instruction and, if the trial court overruled the objection, move for a new trial (*id.*).

Petitioner contends the Second DCA's decisions in <u>Burson v. State</u>, 102 So. 3d 714

(Fla. 2d DCA 2012) and <u>Wright v. State</u>, 975 So. 2d 498 (Fla. 2d DCA 2007)

provided a legal basis for an objection and motion for new trial by counsel (*id.* at 5–6).

In <u>Wright</u>, the State charged Wright with "unlawfully and knowingly, traffic

[king] in cocaine, by selling, delivering, or actually or constructively possessing 200

grams or more of cocaine."  975 So. 2d  at 499.  During trial, the State presented

evidence of the conduct with which Wright was charged, as well as evidence that

Wright participated in bringing the cocaine into Florida by having it shipped to

Florida from Jamaica.  *Id.*  In response to that evidence, Wright argued that she did

not know what was in the package that was shipped from Jamaica.  *Id.* at 500.  At the

conclusion of the trial, despite the methods of trafficking charged in the information,

the court instructed the jury that it could find Wright guilty of trafficking if it found

that she "knowingly sold, *purchased*, *manufactured*, delivered or *brought into Florida*

or possessed a certain substance [cocaine]." *Id.* at 499 (emphasis in original). The jury

found Wright guilty of trafficking on a general verdict form, and she appealed. *Id.*

The Second DCA reversed, stating:

> As demonstrated by the foregoing, the issue of whether Wright was
> guilty of trafficking by bringing cocaine into the State of Florida was
> disputed. Fundamental error was committed when the jury was given an
> instruction defining trafficking which included this manner of
> committing the offense for which Wright had not been charged.

975 So. 2d at 500. The Second DCA court thus remanded the case for a new trial.

In Burson, the defendant was charged with one count of trafficking by sale of

oxycodone and one count of possession of oxycodone. 102 So. 3d at 715. The State

subsequently dismissed the possession charge after Burson established he had a valid

prescription for oxycodone. *Id.* Thus, the sole question before the jury was whether

Burson was guilty of trafficking by sale of oxycodone. *Id.* Despite the fact that the

sole charge was trafficking by sale, the State argued to the jury that it could find

Burson guilty if the State proved that Burson "knowingly possessed, purchased, sold

or delivered " oxycodone. *Id.* The State argued that the evidence established that

Burson "knowingly possessed, purchased or sold" oxycodone and that any of these

acts were sufficient to support the trafficking charge. *Id.* At the conclusion of the

case, the trial court instructed the jury that it could find Burson guilty if it found that

he "knowingly possessed, purchased, sold, or delivered " oxycodone.  *Id.*  Burson did

not object to this instruction, and the jury subsequently found Burson guilty "as

charged" on a general verdict form.  *Id.*

On appeal, Burson argued that he was entitled to a new trial because the trial

court instructed the jury on several <u>uncharged</u> theories of guilt. 102 So. 3d at 715.

Burson asserted that fundamental error occurred because it was impossible to

determine from the general verdict form whether the jury convicted him based on one

of these uncharged theories.  *Id.* at 715–16.

The Second DCA held:

The factual underpinnings of this case are quite similar to those in
*Wright*.  As in *Wright*, the State in this case presented evidence of both
charged and uncharged methods of committing trafficking, and it argued
that any of those methods could be used to find Burson guilty.  The trial
court also instructed the jury that it could find Burson guilty if the State
had established any of the charged or uncharged methods.  As in *Wright*,
this instruction constituted fundamental error because it defined
trafficking to include methods of commission with which Burson was
not charged and which could not legally support a trafficking conviction
since Burson had a valid prescription for oxycodone.  This erroneous
instruction requires us to reverse Burson's conviction and remand for a
new trial.

102 So. 3d at 717.

Here, unlike in <u>Burson</u> and <u>Wright</u>, Petitioner was charged not only with trafficking by <u>sale</u>, but also trafficking by actual or constructive <u>possession</u> (*see* Ex. A at 1).[6] Further, the State did not present evidence of any uncharged methods of committing trafficking, nor did the State argue that an uncharged method could be used to find Petitioner guilty.  Although Petitioner was charged with both sale and possession methods of trafficking, the State focused on the sale method by presenting evidence that Petitioner sold twenty white <u>7.5-milligram</u> pills of hydrocodone to two informants (Katie Farr and Kathryn Stewart) during a controlled buy supervised by Investigator Doyle with the Escambia County Sheriff's Office (*see* Ex. B).[7]

The defense theory was that Ms. Farr and Ms. Stewart framed Petitioner because their relationship with Petitioner and his niece went sour (*see* Ex. B at 73–85, 90–101, 103–04, 128–33, 139–43, 146–51, 170–74; Ex. C at 219–26).  The defense attempted to create reasonable doubt by impeaching the informants' testimony with prior inconsistent statements, and defense counsel presented testimony from a witness who was at the scene of the controlled buy and denied that Petitioner sold the

---

[6] Although the State declined to prosecute a separate charge of possession of hydrocodone, it did so because the possession charge was combined into the trafficking charge (*see* Ex. A at 11).

[7] In the first Rule 3.850 proceeding, Petitioner submitted evidence that on September 15, 2009, the day before the controlled buy, he filled a prescription for <u>10-milligram</u> pills of hydrocodone (Ex. at T at 103).

informants the pills.  To support the defense theory, counsel presented circumstantial evidence that the only hydrocodone to which Petitioner had access was in the form of blue 10-milligram pills of hydrocodone, because he had a valid prescription for it; whereas the hydrocodone that the informants provided to Investigator Doyle was in the form of white 7.5-milligram pills.  Defense counsel questioned the informants and Investigator Doyle regarding their knowledge of Petitioner's prescription for hydrocodone in the form of blue 10-milligram pills, and both informants admitted that they were aware of Petitioner's prescription.    Defense counsel also permitted publication to the jury of Petitioner's statements during a recorded telephone conversation from the jail, in which Petitioner referenced his prescription for hydrocodone, and counsel argued to the jury that Petitioner had a prescription for hydrocodone.

The jury instruction in Petitioner's case, which defined trafficking to include only methods of commission with which Petitioner was charged (including both sale and possession), was not erroneous.  Therefore, Petitioner failed to show that his IATC claim, based upon trial counsel's failure to object to the trafficking instruction, was "substantial" for purposes of Martinez.  He thus failed to show cause for his procedural default of his IATC claim.

With regard to Petitioner's IAAC claim, the claim is also procedurally barred. Petitioner did not present his IAAC claim, based upon appellate counsel's failure to argue fundamental error with respect to the jury instruction, in his state habeas petition alleging IAAC (*see* Ex. J).[8]   Additionally, Petitioner's reliance upon <u>Martinez</u> to establish "cause" for his procedural default of the IAAC claim is misplaced, because <u>Martinez</u> applies only to procedurally defaulted claims of ineffective assistance of <u>trial</u> counsel.  *See* <u>Davila v. Davis</u>, 137 S. Ct. 2058, 2065 (2017) (declining to extend <u>Martinez</u> to a procedurally defaulted claim of ineffective assistance of appellate counsel); <u>Gore v. Crews</u>, 720 F.3d 811, 816 (11th Cir. 2013).

Petitioner procedurally defaulted the IATC and IAAC claims presented in Ground One, and he has failed to demonstrate he is entitled to federal review of either claim through a recognized exception to the procedural bar.  Therefore, Petitioner is not entitled to federal habeas relief on Ground One.

B.   <u>Ground Two:  "Whether trial counsel was ineffective for failing to request the prescription instruction."</u>

---

[8] In Petitioner's state habeas petition, he presented three grounds of IAAC:  (1) appellate counsel failed to raise a claim of fundamental error with respect to the trial court's failure to instruct the jury on a prescription defense to the trafficking charge; (2) appellate counsel failed to raise a claim of trial court error with respect to the court's allegedly threatening Petitioner during a hearing on Petitioner's motion to discharge his trial counsel; and (3) appellate counsel failed to raise a claim of trial court error with respect to the admission of "<u>Williams</u> Rule" evidence (Ex. J).

Petitioner claims that his trial counsel was ineffective for failing to request a jury instruction on the affirmative defense that Petitioner had a valid prescription for hydrocodone (ECF No. 1 at 8–9).  Petitioner contends if the jury had been instructed on the "prescription" defense, there is a reasonable probability the result of trial would have been different (*id.*).  Petitioner additionally claims that the prosecutor misstated the law during closing arguments, when he argued that Petitioner's prescription for hydrocodone was not a defense (*id.*).

Respondent contends the state court's adjudication of the merits of this claim was not based upon an unreasonable determination of the facts or an unreasonable application of Supreme Court precedent (ECF No. 18 at 20–23).

>    1.    Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  To obtain relief under <u>Strickland</u>, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  *Id.* at 687–88.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  *Id.* at 697.

The focus of inquiry under the performance prong of <u>Strickland</u> is whether counsel's assistance was reasonable considering all the circumstances and under prevailing professional norms. <u>Strickland</u>, 466 U.S. at 688–89, 691. "The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." <u>Jones v. Campbell</u>, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing <u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Strickland</u>, 466 U.S. at 689. "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." <u>Michael v. Crosby</u>, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting <u>Chandler</u>, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" <u>Id.</u> (quoting <u>Putman v. Head</u>, 268 F.3d 1223, 1244 (11th Cir. 2001)).

If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example,

what witnesses he presented or did not present—were acts that some lawyer might do.'" <u>Jones</u>, 436 F.3d at 1293 (citing <u>Chandler</u>, 218 F.3d at 1314–15 n.15). "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." <u>Rogers v. Zant</u>, 13 F.3d 384, 386 (11th Cir. 1994).

As to the prejudice prong of the <u>Strickland</u> standard, Petitioner's burden of demonstrating prejudice is high. *See* <u>Wellington v. Moore</u>, 314 F.3d 1256, 1260 (11th Cir. 2002). To establish prejudice, Petitioner must show "that every fair-minded jurist would conclude 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" <u>Jones v. GDCP Warden</u>, 753 F.3d 1171, 1184 (11th Cir. 2014) (quoting <u>Strickland</u>, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome," not that counsel's conduct more likely than not altered the outcome of the proceeding. *Id.* (citation omitted). And Petitioner must show that the likelihood of a different result is substantial, not just conceivable. <u>Williamson v. Fla. Dep't of Corr.</u>, 805 F.3d 1009, 1016 (11th Cir. 2015) (citing <u>Richter</u>, 562 U.S. at 112). "When a defendant challenges a conviction, the question is whether there is a

reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Strickland, 466 U.S. at 695.  The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law.  Id. at 694–95.  Further, when the claimed error of counsel occurred at the guilt stage of trial (instead of on appeal), Strickland prejudice is gauged against the outcome of the trial, not on appeal.  See Purvis v. Crosby, 451 F.3d 734, 739 (11th Cir. 2006) (citing Strickland, 466 U.S. at 694–95).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  Strickland, 466 U.S. at 698; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999).  "Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010).  "Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult."  Richter, 131 S. Ct. at 788.  As the Richter Court explained:

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so.

The Strickland standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Id.* (citations omitted).

### 2.    Federal Review of State Court Decision

Petitioner presented this claim as Ground One of his amended Rule 3.850 motion (Ex. T at 133–36).  The state circuit court adjudicated the claim as follows:

A claim of ineffective assistance of trial counsel is reviewed under the test as outlined in Strickland v. Washington, 466 U.S. 668 (1984).  Under this standard, a defendant is not entitled to relief unless he can show that his attorney's performance was both deficient and that he was prejudiced by the alleged deficiency.  In order to demonstrate prejudice under Strickland, the defendant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

**Ground 1**—In his first claim, the Defendant alleges that his attorney erred in failing to request a jury instruction on his "prescription defense."  He also claims that the State made improper comments during closing argument and misstated the law.

Initially, the Court is not convinced that the Defendant was entitled to a jury instruction asserting the prescription defense absent any evidence that he did, in fact, have a legitimate prescription.[FN 1]  The Defendant did not testify that he had a prescription, nor did he call any witnesses supporting his claim.  The only evidence suggesting that Defendant had a prescription were hearsay statements made by the

Defendant.  In a recorded statement made by Defendant to Kayla Weir while awaiting trial, the Defendant said that he could not be charged with trafficking "if I got pills from a doctor.  I've got a prescription to get my pills  from  a  doctor."[FN 2]    The  doctor  was  never  identified  and evidence of a prescription was never presented to the Court.

> [FN 1:  See Rockerman v. State, 773 So. 2d 602 (Fla. 1st DCA 2000).]

> [FN 2:  Transcript (T.) at 120–124, attached as Exhibit A.]

Even,  however,  if  the  Defendant  had  a  prescription  and  was entitled to the instruction, it would not serve as a defense in his particular case.    Pursuant  to  section  893.135,  Florida  Statutes,  a  defendant  in possession  of  more  than  4  grams  of  certain  drugs,  including  Lortab,  can be  convicted  of  trafficking  in  illegal  drugs.    A  valid  prescription  is  a defense to the charges, unless the Defendant was actually shown to have sold or delivered the contraband.[FN 3]  In the instant case, the State did not rely on the Defendant's possession of the requisite amount of drugs to  establish  guilt.    Rather,  the  State  presented  evidence  that  he  had actually sold drugs to a confidential informant on September 16, 2009.

> [FN 3:  Celeste v. State, 79 So. 2d 898 (Fla. 5th DCA 2012).]

Investigator  Timothy  Doyle  testified  that  he  had  arranged  a controlled  purchase  between  the  Defendant  and  two  confidential informants.[FN 4]  The informants, Katie Farr and Kathryn Stewart, purchased  twenty  pills  from  the  Defendant  with  money  provided  by Investigator Doyle.  The total weight of the pills, later revealed to be Lortab, was "around 13 grams", according to Investigator Doyle.

> [FN 4:  T. 76–86, attached as Exhibit B.]

Katie Farr testified that she was involved in a controlled purchase arranged by Investigator Doyle against the Defendant.[FN 5]  Ms. Farr

said that the Defendant agreed to sell her and another woman, Kathryn Stewart, twenty Lortab for $100.00.  Ms. Farr said that she gave the Defendant the money and that he gave the drugs to Ms. Stewart.  Ms. Stewart was also called and testified about the day she and Ms. Farr purchased drugs from the Defendant.[FN 6]   Whether or not the Defendant had a prescription, accordingly, would not be a defense to the allegation that he trafficked in Lortab.  The failure to request a jury instruction on this issue, therefore, is harmless since the Defendant cannot show prejudice.

[FN 5:  T. at 94–101, attached as Exhibit C.]

[FN 6:  T. at 128–133, attached as Exhibit D.]

The Defendant also alleges that the State made improper remarks during closing arguments.  At closing, the State informed the jury that:

> In this case he says he has a prescription.  He says these are his pills.  Says those are his pills, but it's ok, I have a prescription.  That's not a defense.  At the time he thought it was a defense.  It's not a defense . . . ."[FN 7]

The State went on to add that it was not a defense to "go to ten different doctors and get a bunch of prescriptions and turn and sell them . . . ."  The Defendant writes that trial counsel should have objected to these statements.  The Court has reviewed both comments and finds that they were both fair comments on the law and evidence.  Since the comments made by the State during closing arguments were not objectionable and the Defendant cannot show any prejudice, this claim is denied.

[FN 7:  T. at 217, attached as Exhibit E.]

(Ex. U at 166–69).  The First DCA affirmed the lower court's decision without written

opinion (Ex. Y).

Since the charge of trafficking may be proven through possession of a certain amount of a controlled substance, "[an affirmative] prescription defense is . . . available to those who have a valid prescription written directly on their behalf for the pills in their possession."  McCoy v. State, 56 So. 3d 37, 39 (Fla. 1st DCA 2010) (citations omitted). Specifically, section 893.13(6)(a), Florida Statutes (2009), provides,

> It is unlawful for any person to be in actual or constructive possession of a controlled substance <u>unless such controlled substance was lawfully obtained from a practitioner or pursuant to a valid prescription</u> or order of a practitioner while acting in the course of his or her professional practice or to be in actual or constructive possession of a controlled substance except as otherwise authorized by this chapter.

Fla. Stat. § 893.13(6)(a) (emphasis added); *see also* Wagner v. State, 88 So.3d 250, 252 (Fla. 4th DCA 2012) ("A valid prescription is a complete defense to trafficking and a defendant is entitled to a jury instruction on the defense.").

Petitioner submitted to the state post-conviction court a document showing that he had a prescription for 10-milligram pills of hydrocodone at the time of the controlled buy (September of 2009) (*see* Ex. T at 103–05).   However, the hydrocodone he was accused of trafficking was 7.5-milligram pills of hydrocodone, not 10-milligram pills.  Further, as previously discussed, although the State charged Petitioner under several methods of trafficking (including both possession and sale),

the State presented evidence on the sale method. The confidential informants testified that Petitioner sold them twenty 7.5-milligram pills of hydrocodone for $100.00 during the controlled buy, and that they turned the pills over to Investigator Doyle (*see* Ex. B). Investigator Doyle identified the twenty 7.5-milligram pills as the pills recovered from the confidential informants after the controlled buy (*see id.*). Mr. Bortle, a crime laboratory analyst, testified that he received the twenty pills from the Sheriff's Office, chemically analyzed one of them, and determined that the pills contained hydrocodone and weighed a total of 12.9 grams (*see id.*). There was no evidence, circumstantial or otherwise, that Petitioner obtained the 7.5-milligram pills from a practitioner or pursuant to a valid prescription. Therefore, defense counsel had no factual or evidentiary basis to request a jury instruction on a "prescription" defense to the trafficking charge. Further, the state court reasonably concluded that in light of the evidence presented at trial, there was no reasonable probability of a different verdict even if the "prescription" instruction had been given.

With regard to Petitioner's IATC claim based upon defense counsel's failure to object to the prosecutor's comment during closing argument (that Petitioner's prescription was not a valid defense to the trafficking charge), the state court

reasonably concluded that defense counsel was not deficient, and Petitioner was not prejudiced by counsel's failure to object.

Under Florida law, the standard for reviewing prosecutorial comments is the following:

> Wide latitude is permitted in arguing to a jury. Logical inferences may be drawn, and counsel is allowed to advance all legitimate arguments. The control of comments is within the trial court's discretion, and an appellate court will not interfere unless an abuse of such discretion is shown. A new trial should be granted when it is "reasonably evident that the remarks might have influenced the jury to reach a more severe verdict of guilt than it would have otherwise done." Each case must be considered on its own merits, however, and within the circumstances surrounding the complained-of remarks.

Breedlove v. State, 413 So. 2d 1, 8 (Fla. 1982) (quoting Darden v. State, 329 So. 2d 287, 289 (Fla. 1976)) (other citations omitted). The prosecutor may not, however, "'inflame the minds and passions of the jurors so that their verdict reflects an emotional response to the crime or the defendant rather than the logical analysis of the evidence in light of the applicable law.'" Jones v. State, 612 So. 2d 1370, 1374 (Fla. 1993) (quoting Bertolotti v. State, 476 So. 2d 130 (Fla.1985)). This state rule is essentially the same as the federal due process standard governing allegedly improper argument by the prosecution. A prosecutor may argue both facts in evidence and reasonable inferences from those facts. See Tucker v. Kemp, 762 F.2d 1496, 1506

(11th Cir. 1985) (citations omitted). But if the evidence is too insubstantial to support

a reasonable inference, the prosecutor's comment will be deemed improper. *Id.* at

1507. Prosecutors must observe the distinction between the permissible practice of

arguing evidence and suggesting inferences which the jury may reasonably draw from

it and the impermissible practice of arguing suggestions beyond the evidence. *See*

United States v. Simon, 964 F.2d 1082, 1086 (11th Cir. 1992) (citation omitted).

Further, the prosecutor is not limited to a bare recitation of the facts; he may

comment on the evidence and express the conclusions he contends the jury should

draw from the evidence. United States v. Johns, 734 F.2d 657, 663 (11th Cir. 1984).

A prosecutor may comment on the uncontradicted or uncontroverted nature of the

evidence and may point out that there is an absence of evidence on a certain issue

during closing argument to the jury. *See* White v. State, 377 So. 2d 1149 (Fla. 1980).

Additionally, prosecutorial comment upon a general lack of defense evidence is

permissible. *See* Smiley v. State, 395 So. 2d 235 (Fla. 1st DCA 1981).

However, it should be noted that "[t]he prohibition against vouching does not

forbid prosecutors from arguing credibility . . . it forbids arguing credibility based on

the reputation of the government office or on evidence not before the jury." United

States v. Hernandez, 921 F.2d 1569, 1573 (11th Cir. 1991). Furthermore, when the

prosecutor voices a personal opinion but indicates this belief is based on evidence in the record, the comment is not improper.  United States v. Granville, 716 F.2d 819, 822 (11th Cir. 1983) (finding no prosecutorial misconduct where prosecutor, in effort to support testimony of two government witnesses, only pointed to matters in evidence: the demeanor of one witness and testimony of support witnesses, as well as a tape recording corroborating the testimony of another) (citations omitted).  Likewise, a prosecutor may reply to remarks, comments or assertions made by defense counsel. See United States v. Young, 470 U.S. 1, 11–13, 105 S. Ct. 1038, 84 L. Ed.2 d 1 (1985) (when prosecutor's comments are an "invited reply" in response to defense counsel's own remarks, and he "[does] no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction") (citations omitted).

Finally, "the limits of proper argument find their source in notions of fairness, the same source from which flows the right to due process of law."  Houston v. Estelle, 569 F.2d 372, 380 (5th Cir. 1978).  "The relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  Darden v. Wainwright, 477 U.S. 168, 181, 106 S. Ct. 2464, 2471, 91 L. Ed. 2d 144 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974)).  Thus, to establish prosecutorial

misconduct, a two-prong test must be satisfied:  (1) the prosecutor's comments must have been improper; and (2) the comments must have rendered the trial fundamentally unfair.  *See* United States v. Eyster, 948 F.2d 1196, 1206 (11th Cir. 1991) (citations omitted); Brooks v. Kemp, 762 F.2d 1383, 1400 (11th Cir. 1985) (en banc), *vacated on other grounds*, 478 U.S. 1016, 106 S. Ct. 3325, 92 L. Ed. 2d 732 (1986), *reinstated*, 809 F.2d 700 (11th Cir. 1987); Dessaure v. State, 891 So. 2d 455, 464–65 (Fla. 2004) (an order granting mistrial is required only when the error upon which it rests is so prejudicial as to vitiate the entire trial, making a mistrial necessary to ensure that the defendant receives a fair trial).

Upon review of the evidence adduced at trial and the entirety of the arguments of the prosecutor and defense counsel during closing arguments (Exs. B, C), the undersigned concludes—as did the state circuit court and the First DCA—that Petitioner failed to show that defense counsel's failure to object to the comment, that Petitioner's prescription was not a defense, constituted deficient performance, or that there is a reasonable probability the outcome of trial would have been different if counsel had objected.  Therefore, the state court's adjudication of Ground Two was not an unreasonable application of Strickland.

V.      CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

"Section 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (quoting § 2253(c)(2)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" Buck v. Davis, 580 U.S.—, 137 S. Ct. 773 (2017) (citing Miller-El, 537 U.S. at 327). The petitioner here cannot make that showing. Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of  Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (ECF No. 1) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 26th day of July 2017.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**